**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERIPRISE BANK, FSB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-1113** |
| | ) | **Judge Nora Barry Fischer** |
| **PNC BANK, NATIONAL** | ) | |
| **ASSOCIATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.    <u>Introduction</u>

Pending before the Court are an application[1] to confirm an arbitral award filed by the Plaintiff and a motion to dismiss filed by the Defendant. Docket Nos. 1 & 10. For the reasons that follow, the motion to dismiss will be denied. Docket No. 10. The application for an order confirming the award will be granted, and the order proposed by the Plaintiff will be entered. Docket Nos. 1 & 1-1.

### II.    <u>Background</u>

PNC Bank, National Association ("PNC"), is a national banking association with its principal office in Wilmington, Delaware. Docket No. 1 at ¶ 3. American Express Travel Related Services Company, Inc. ("AMEX Travel"), and American Express Bank, FSB ("AMEX Bank"), are subsidiaries of American Express Company ("American Express"). *Id.* at ¶ 8, n. 1. Pursuant to agreements with AMEX Travel and AMEX Bank executed on June 26, 2000, and June 30, 2004, PNC originated and serviced home equity lines of credit for AMEX Bank. *Id.* at

---

[1] Although the application appears as a "complaint," it must be considered "in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6; *Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007); *IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006).

8.  Ameriprise Bank, FSB ("Ameriprise"), is a federal savings bank with its principal office in Minneapolis, Minnesota.  *Id.* at ¶ 2.  AMEX Bank's loan portfolio was transferred to Ameriprise in 2006.  *Id.* at ¶ 9.  The transfer followed the spinoff of Ameriprise's parent company, Ameriprise Financial, Inc., to the shareholders of American Express.  *Id.*

After the spinoff, Ameriprise learned that PNC had committed various errors relating to the origination and servicing of some loans.  *Id.* at ¶ 10.  These errors caused Ameriprise to suffer damages.  *Id.*  In a letter dated January 12, 2009, Ameriprise demanded that PNC mitigate the resulting damages or indemnify Ameriprise pursuant to the terms of the agreements.  *Id.* at ¶ 11.  PNC refused to honor Ameriprise's demand.  *Id.*

The agreements specified that disputes arising thereunder were to be arbitrated before the American Arbitration Association ("AAA").  *Id.* at ¶ 12.  Ameriprise initiated arbitration proceedings against PNC on July 23, 2009.  *Id.* at ¶ 13.  A commercial arbitration tribunal consisting of three members was convened to consider Ameriprise's claims.  Docket No. 1-7 at 2-8.  The tribunal received evidence pertaining to alleged mistakes involving forty-six different loans.  *Id.* at 2.  Ameriprise's claims concerning thirty-seven of the loans were denied.  *Id.* at 5. The tribunal awarded Ameriprise a total of $443,863.48 for servicing errors involving eight of the remaining nine loans.[2]  *Id.* at 4-5.  Ameriprise was instructed to assign its rights under those loans to PNC upon receipt of the amounts awarded.  *Id.* at 5.

The outstanding claim asserted by Ameriprise stemmed from mistakes connected to a loan issued to Denise Workman ("Workman") on October 13, 2004.  Docket No. 1 at ¶ 6.  The claim had "an estimated value of not less than $100,283.15, excluding interest and costs."  *Id.*  In the portion of its decision discussing that loan, the tribunal stated:

---

[2] The damages resulting from the servicing errors were separately valued at $105,000.00, $24,483.79, $72,376.19, $89,242.00, $1,805.83, $49,453.69, $53,740.86, and $47,761.12.  Docket No. 1-7 at 4.

> With respect to the Workman Loan, should the origination error of misidentifying the property result in a claim against Ameriprise for refund of the amount received, PNC, upon notice from Ameriprise shall undertake any necessary defense and indemnification of Ameriprise.

Docket No. 1-7 at 5.  No monetary award was provided for the mistake involving that loan.

In a letter dated May 1, 2012, Ameriprise informed PNC that it had decided not to assign its rights under one of the eight loans for which damages had been awarded.  Docket No. 1-8 at 2.  PNC was relieved of its obligation to pay the award connected with that loan, which was equal to $72,376.19.  *Id.*  Ameriprise requested that PNC pay the remaining $371,487.29 that had been awarded by the tribunal.  *Id.* at 3.  In addition, Ameriprise expressed its intention "to memorialize PNC's indemnification obligation with respect to the Workman loan" by seeking confirmation of the tribunal's award.  *Id.* at 2.  On May 15, 2012, PNC paid Ameriprise $371,487.29 to satisfy its monetary obligations under the tribunal's decision.  Docket No. 1 at ¶ 18.  Ameriprise's rights under the seven loans for which payments had been made were assigned to PNC.  *Id.*

Ameriprise commenced this action on August 7, 2012, seeking confirmation of PNC's obligations under the arbitral award pertaining to the loan issued to Workman.  *Id.* at ¶ 6.  On September 6, 2012, PNC moved for the dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3]  Docket No. 10.  Ameriprise's application for confirmation and PNC's motion to dismiss will both be addressed in this memorandum opinion.

## III.  <u>Standards of Review</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims.  FED. R. CIV. P. 12(b)(1).  "At

---

[3] The Federal Rules of Civil Procedure govern proceedings under the Federal Arbitration Act ("FAA") [9 U.S.C. § 1 *et seq.*] except to the extent that the FAA provides for the use of "other procedures."  FED. R. CIV. P. 81(a)(6)(B).

issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D.Pa. 2007), quoting *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). As the party asserting that jurisdiction exists, the plaintiff bears the burden of showing that his or her claims are properly before the court. *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings on jurisdictional grounds. *Petruska v. Gannon University*, 462 F.3d 294, 302, n. 3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself whether jurisdiction over the plaintiff's claims can be properly exercised. *Mortensen*, 549 F.2d at 891.

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard requires more than "a formulaic recitation of the elements of

a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.* This requirement is designed to facilitate the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of [a] claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)(emphasis added).

In considering a motion to dismiss filed pursuant to Rule 12(b)(6), a court accepts all of the plaintiff's allegations as true and views all reasonable inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). In addition to the allegations contained in the complaint, a court may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n. 2 (3d Cir. 1994).

IV. **Discussion**

This matter is before the Court pursuant to the Federal Arbitration Act ("FAA") [9 U.S.C. § 1 *et seq.*]. Section 2 of the FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[4]  9 U.S.C. § 2.  The United States Supreme Court has construed the phrase "involving commerce" broadly enough to extend the FAA's reach to the limits of Congress' power under the Commerce Clause.[5]  *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268-277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).  The Supreme Court has also interpreted the phrase "evidencing a transaction" to reach contracts concerning transactions that turn out to affect interstate commerce "in fact," even if the parties to those contracts "did not contemplate an interstate commerce connection."  *Id.* at 281.  Since the contracts at issue in this case evidenced transactions "involving commerce," the dispute between the parties must be considered in accordance with the FAA.

The FAA includes provisions governing the enforcement of arbitral awards.  9 U.S.C. §§ 9-13.  Ameriprise's application for confirmation is before the Court pursuant to § 9 of the FAA, which provides:

> **§ 9.  Award of arbitrators; confirmation; jurisdiction; procedure**
> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the

---

[4] This statutory provision "'appli[es] in state as well as federal courts' and 'foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements.'"  *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008)(brackets in original), quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

[5] The applicable language of the United States Constitution gives Congress the power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. CONST., ART. I, § 8.  The FAA defines the term "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation," excluding "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.

arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title [9 U.S.C. §§ 10, 11].  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.  Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.  If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court.  If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

9 U.S.C. § 9.  A judgment entered pursuant to § 9 has "the same force and effect" as "a judgment in an action," and "may be enforced as if it had been rendered in an action in the court in which it is entered."  9 U.S.C. § 13.

Confirmation of an arbitral award is available under § 9 only if the parties "have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration."  9 U.S.C. § 9.  Federal courts have disagreed as to how explicit an "agreement" must be in order to satisfy § 9's statutory prerequisite to the entry of a judgment.  *Idea Nuova, Inc. v. GM Licensing Group, Inc.*, 617 F.3d 177, 180-182 (2d Cir. 2010)(holding that parties agree to judicial confirmation of final arbitral awards when they agree to be bound by "the AAA Commercial Arbitration Rules," which themselves provide for such confirmation); *Milk Drivers, Dairy & Ice Cream Employees v. Roberts Dairy*, 294 F.Supp.2d 1050, 1055 (S.D.Iowa 2003)(discussing the different approaches taken by federal courts to the issue while explaining that, in the Eighth Circuit, "parties must have an *express affirmative agreement* providing for judicial confirmation of an award" in order to satisfy § 9's "agreement" requirement)(emphasis in original).  The written agreements executed by PNC and AMEX Travel on June 26, 2000, plainly provided that,

in the event that the arbitration of a dispute resulted in an award, a "judgment upon the award rendered by the arbitrator [could] be entered in any court having jurisdiction thereof." Docket No. 1-4 at 43; Docket No. 1-5 at 37. Given the clear and unambiguous language contained in those agreements, § 9's prerequisite has been satisfied even if it is assumed that an implicit "agreement" would not suffice. *Oklahoma City Associates v. Wal-Mart Stores, Inc.*, 923 F.2d 791, 795 (10th Cir. 1991)(declining to decide whether an implicit "agreement" could facilitate confirmation because the party requesting confirmation had "failed to point out any language in the arbitration clause that either explicitly or implicitly demonstrate[d] an intent of the parties to have judgment entered on an arbitration award").

Sections 10 and 11 of the FAA enumerate the grounds upon which a court may vacate,[6] modify or correct[7] an arbitral award. 9 U.S.C. §§ 10, 11. In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578, 584, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), the Supreme Court held that "§§ 10 and 11 provide[d] the FAA's exclusive grounds for expedited vacatur and modification," and that those "statutory grounds" could not be "supplemented by contract." Discussing the interaction between § 9 and the "prescribed" grounds for vacatur and modification, the Supreme Court went on to make the following observations:

> [E]xpanding the detailed categories would rub too much against the grain of the § 9 language, where provision for judicial confirmation carries no hint of flexibility. On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed

---

[6] An order vacating an arbitral award may be entered "where the award was procured by corruption, fraud, or undue means;" "where there was evident partiality or corruption in the arbitrators, or either of them;" "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)-(4).

[7] An order "modifying or correcting" an arbitral award may be entered "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;]" "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[;]" or "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(a)-(c).

in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies. This does not sound remotely like a provision meant to tell a court what to do just in case the parties say nothing else.

*Hall Street*, 552 U.S. at 587 (footnote omitted). The reasoning employed in *Hall Street* suggests that a court having jurisdiction over a § 9 application *must* enter "an order confirming the award" unless a statutory ground for vacatur or modification exists. 9 U.S.C. § 9.

Section 12 of the FAA provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The FAA "does not permit the assertion of challenges to an arbitration award in opposition to a motion to confirm the award after the three-month limitations period has expired." *Jereeddi A. Prasad, M.D., Inc. v. Investors Associates, Inc.*, 82 F.Supp.2d 365, 367-368 (D.N.J. 2000), citing *Service Employees International Union v. Office Center Services, Inc.*, 670 F.2d 404, 409 (3d Cir. 1982). The award at issue in this case was "filed or delivered" on August 11, 2011. Docket No. 1-7 at 6-8. The tribunal's decision was favorable to Ameriprise with respect to nine of the forty-six loans in question. *Id.* at 4-5. It was favorable to PNC with respect to the remaining thirty-seven loans. *Id.* at 5. Neither party filed an application for vacatur, modification or correction of the award during the three months immediately postdating the tribunal's decision. 9 U.S.C. §§ 10, 11. Therefore, the Court "must grant" Ameriprise's application for "an order confirming the award" if no jurisdictional defect exists. *Hall Street*, 552 U.S. at 587.

Ameriprise seeks an order confirming the arbitration award solely with respect to PNC's defense and indemnification obligations in relation to the loan issued to Workman. Docket No. 1 at 5. The application filed by Ameriprise contains no language suggesting that PNC has failed to

comply with the arbitration award, or that PNC has evinced an unwillingness to honor its prospective obligations in connection therewith. *Id.* at ¶¶ 1-20. PNC contends that since it has neither declined to fulfill its monetary obligations nor expressed a desire to avoid its prospective obligations, no "Case" or "Controversy" exists within the meaning of Article III of the United States Constitution. Docket No. 11 at 4-5.

"The judicial Power of the United States" extends only to actual "Cases" and "Controversies." U.S. CONST., ART. III, §§ 1, 2. A dispute does not constitute a justiciable "Case" or "Controversy" unless the party seeking redress has the proper legal "standing" to do so. *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). "In order for a plaintiff to have Article III standing, he or she must establish that: (1) he or she has suffered an "injury in fact" (*i.e.*, an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, and not merely conjectural or hypothetical); (2) there is a causal relationship between his or her injury and the alleged conduct of the defendant; and (3) it is likely that the injury will be redressed by a decision rendered in his or her favor." *Burns v. Alexander*, 776 F.Supp.2d 57, 74 (W.D.Pa. 2011), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). PNC argues that Ameriprise has not suffered a redressable injury, since the terms of the arbitral award have not been violated. Docket No. 11 at 4-5.

Ameriprise maintains that an order confirming the arbitral award can be entered in the absence of a *new* controversy between the parties. Docket No. 13 at 2-3. In addition, Ameriprise points out that if it had to wait for PNC to breach the terms of the award before seeking confirmation, it would have to file an application beyond the one-year limitations period prescribed by § 9. *Id.* at 5-6. The application in this case was filed four days before the first

anniversary of the award. Docket No. 1. Instead of waiting for a breach, Ameriprise apparently acted before the expiration of § 9's one-year limitations period.

"[T]here is a division of authority on the issue of whether the one-year limit is absolute." *Hare v. Hosto & Buchan, PLLC*, 774 F.Supp.2d 849, 853 (S.D.Tex. 2011). Some federal courts have construed § 9's use of the word "may" to mean that an application for confirmation can be filed after the expiration of the one-year period. *Val-U Construction Co. of South Dakota v. Rosebud Sioux Tribe*, 146 F.3d 573, 581 (8th Cir. 1998); *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 150-156 (4th Cir. 1993). Nevertheless, in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 198, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000), the Supreme Court observed that the FAA's use of the word "may" was "not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority." Seizing on the Supreme Court's observation, the United States Court of Appeals for the Second Circuit has construed § 9 to impose "a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA." *Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152, 155-158 (2d Cir. 2003). Ameriprise asserts that its application for an order confirming the arbitral award needed to be filed before the expiration of the one-year limitations period in order to prevent its "right to seek indemnification" from becoming "unenforceable." Docket No. 13 at 6.

PNC attempts to refute Ameriprise's position by relying on the decisions holding that confirmation applications may be filed after the expiration of the one-year period prescribed by § 9. Docket No. 16 at 3. PNC also points out that "Ameriprise's attempt to 'confirm' the award under the FAA is not the only remedy available to enforce the award." *Id.* The Supreme Court has suggested that parties relying on arbitral awards "may contemplate enforcement under state

statutory or common law." *Hall Street*, 552 U.S. at 590. Since "[t]he FAA supplemented rather than extinguished any previously existing remedies," "an action at law remains a viable alternative to confirmation proceedings under § 9." *Sverdrup Corp.*, 989 F.2d at 155. PNC argues that the availability of alternative remedies makes it unnecessary for the award to be "confirmed" at this time. Docket No. 16 at 3-4.

The provisions of the FAA should not be construed in such a way as to render certain words or phrases superfluous. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-115, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). This principle strongly counsels in favor of reading § 9 to preclude the filing of a confirmation application more than a year after the date of an arbitral award. *Photopaint Technologies*, 335 F.3d at 157-158. The alternative reading "fails to give independent effect to" the language describing the one-year period. *Circuit City Stores*, 532 U.S. at 114. For this reason, it appears that Ameriprise would have foreclosed resort to the "streamlined treatment" available under the FAA if it had declined to file the instant application on or before August 13, 2012.[8] *Hall Street*, 552 U.S. at 582. Since the application was filed in a timely manner, however, the Court has no occasion to consider whether a later application would have been time-barred. It suffices to say that Ameriprise did not act unreasonably in seeking confirmation of the arbitral award early enough to avoid a potential statute-of-limitations problem.

The jurisdictional question does not turn on the reasonableness of Ameriprise's actions. Like any other litigant seeking relief in an Article III court, a party invoking the remedies available under the FAA must demonstrate that a live "Case" or "Controversy" exists. *Stolt-Nielsen S.A. v. Animalfeeds International Corp.*, ___U.S.___, ___, 130 S.Ct. 1758, 1767, n. 2,

---

[8] Since August 11, 2012, fell on a Saturday, Ameriprise could have filed the application on August 13, 2012. FED. R. CIV. P. 6(a)(1)(C).

176 L.Ed.2d 605 (2010). The relevant question is whether an order confirming the portion of the tribunal's award concerning the loan issued to Workman would redress an actual injury suffered by Ameriprise.

Some federal courts have held that "there must be some type of controversy necessitating judicial enforcement of an [arbitral] award in order to justify its confirmation by court order." *Local 2412 of the United Mine Workers of America v. Consolidation Coal Co.*, 682 F.Supp. 399, 400 (S.D.Ill. 1988). Courts adhering to that view generally focus on the enforcement or implementation of an arbitral award rather than on the underlying dispute resolved by that award. *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 491 (1st Cir. 1983)("The present case involves no such 'new dispute' to be distinguished (or not distinguished) from the one resolved by the arbitrator."); *Steris Corp. v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America*, 489 F.Supp.2d 501, 515 (W.D.Pa. 2007)(following "decisions from several jurisdictions holding that confirmation is improper in the absence of any actual controversy regarding the validity of an award or compliance with it"). Other federal courts have concluded that an order confirming an arbitral award may be entered even when there is no "occasion warranting enforcement." *Insurdata Marketing Services, LLC v. Healthplan Services, Inc.*, 352 F.Supp.2d 1252, 1255 (M.D.Fla. 2005). Courts taking the latter position tend to focus on the underlying controversy resolved by an arbitral decision rather than on the parties' compliance with the decision itself. *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). Even fully satisfied monetary awards have been confirmed by federal courts. *Collins v. D.R. Horton, Inc.*, 361 F.Supp.2d 1085, 1093 (D.Ariz. 2005)("The mere fact that Horton has satisfied a portion of its obligation under the arbitration award does not divest the court of authority to confirm that portion of the award—satisfaction and confirmation are separate

issues.”); *District Council No. 9 v. APC Painting, Inc.*, 272 F.Supp.2d 229, 239 (S.D.N.Y. 2003)(stating that whether arbitral awards have been satisfied “has no bearing on whether [they] should be confirmed”).  A similar split of authority has developed among state courts presented with the question of whether an uncontested arbitral award may be confirmed.  Courts in Wyoming, Massachusetts and Washington have held that a request for confirmation becomes moot when an arbitral award is satisfied.  *Stewart Title Guaranty Co. v. Tilden*, 64 P.3d 739, 740-742 (Wyo. 2003); *Murphy v. National Union Fire Insurance Co.*, 781 N.E.2d 1232, 1236-1237 (Mass. 2003); *Kenneth W. Brooks Trust A. v. Pacific Media, L.L.C.*, 44 P.3d 938, 941-942 (Wash.Ct.App. 2002).  In contrast, courts in Nebraska and Hawaii have entered orders confirming satisfied awards.[9]  *Drummond v. State Farm Mutual Automobile Insurance Co.*, 785 N.W.2d 829, 833-834 (Neb. 2010); *Mikelson v. United Services Automobile Association*, 227 P.3d 559, 561-567 (Haw.Ct.App. 2010).

In this case, the Court is not being asked to confirm a *satisfied* award.  Ameriprise seeks an order confirming only the portion of the award pertaining to PNC’s *prospective* defense and indemnification responsibilities.  Docket No. 1 at 5-6.  The only question is whether Article III’s “Case” or “Controversy” requirement is satisfied.  U.S. CONST., ART. III, § 2.  That question must be considered in relation to the FAA’s statutory scheme.

Although the FAA “creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate,” “it does not create any independent federal-question

---

[9] Although the jurisdictional limitations inherent in Article III apply only to federal courts, state courts in the five relevant jurisdictions operate under similar constraints imposed by state law.  *Office of Hawaiian Affairs v. Housing & Community Development Corp. of Hawaii*, 219 P.3d 1111, 1118-1119 (Haw. 2009); *Washington Education Association v. Public Disclosure Commission*, 80 P.3d 608, 613 (Wash. 2003); *Director of the Office of State Lands & Investments v. Merbanco, Inc.*, 70 P.3d 241, 246-248 (Wyo. 2003); *U.S. Ecology, Inc. v. Dept. of Environmental Quality*, 601 N.W.2d 775, 779 (Neb. 1999); *Commissioner of Correction v. Ferguson*, 421 N.E.2d 444, 446 (Mass. 1981).  Therefore, the state-court decisions discussing the effect that compliance or satisfaction may have on a request for confirmation may inform the inquiry as to whether the Court has jurisdiction to enter the order sought by Ameriprise in this case.

jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25, n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 U.S.C. § 1 *et seq.*], in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Interpreting this statutory provision in *Vaden v. Discover Bank*, 556 U.S. 49, 62, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), the Supreme Court declared that "a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy." Speaking through Justice Ginsburg, the Supreme Court explained that a federal court presented with a § 4 petition must decide "whether the whole controversy between the parties—not just a piece broken off from that controversy—is one over which the federal courts would have jurisdiction." *Vaden*, 556 U.S. at 67.

Admittedly, the instant case does not involve a petition to compel arbitration. 9 U.S.C. § 4. Instead, it involves an application for an order confirming a portion of the arbitral award rendered by the tribunal. 9 U.S.C. § 9. Nonetheless, the jurisdictional question must still be answered by reference to "the parties' underlying substantive controversy" rather than in relation to "a piece broken off from that controversy." *Vaden*, 556 U.S. at 62, 67. In *Smith v. Tele-Town Hall, LLC*, 798 F.Supp.2d 748 (E.D.Va. 2011), the United States District Court for the Eastern District of Virginia observed:

> [C]ourts should not ignore the broader context of the FAA and the important relationship between arbitration and judicial resolution of disputes. When a party moves to confirm, vacate, or modify an arbitration award, the controversy in issue is not simply the arbitration award but also the underlying substantive claims.

> Ignoring the underlying claims and focusing instead solely on the arbitration award divorces the judicial process from the arbitration process in a manner inconsistent with the FAA.

*Smith*, 798 F.Supp.2d at 756.  Consistent with the logic adopted in *Smith*, the parties' "underlying substantive claims" must control the jurisdictional inquiry.  *Id.*

Ameriprise and PNC are "Citizens of different States" within the meaning of 28 U.S.C. § 1332(a)(1).  Docket No. 1 at ¶¶ 1-3.  It is beyond dispute that "the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs."[10]  28 U.S.C. § 1332(a).  The claim arising out of the loan issued to Workman need not be separated from the parties' broader dispute for the purpose of determining whether the Court has jurisdiction to confirm the prospective award stemming from that claim.  *Vaden*, 556 U.S. at 69, n. 18 (remarking that "if a federal court would have jurisdiction over the parties' whole controversy," there would be "nothing anomalous about the court's ordering arbitration of a state-law claim constituting part of that controversy").  The statutory prerequisites for the exercise of jurisdiction are clearly satisfied.  The Court does not understand PNC to contend otherwise.  PNC's jurisdictional challenge is premised solely on the alleged lack of a "Case" or "Controversy" under Article III.  Docket No. 11 at 4-5; Docket No. 16 at 1-4.

Jurisdiction cannot be grounded on the fact that a "Case" or "Controversy" existed when the arbitration proceedings were underway.  *Burns*, 776 F.Supp.2d at 75.  The "case-or-controversy requirement" of the Constitution "subsists through all stages of federal judicial proceedings."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d

---

[10] Federal courts have disagreed as to whether the amount in controversy should be determined by reference to the amount *demanded* in an arbitration proceeding, or whether it should be determined by reference to the amount ultimately *awarded* by an arbitral tribunal.  *Karsner v. Lothian*, 532 F.3d 876, 882 (D.C. Cir. 2008)(discussing the different methods of calculation used by federal courts in determining whether the amount-in-controversy requirement is satisfied in cases governed by the FAA's post-award provisions).  Since both amounts exceed $75,000 in this case, the Court has no occasion to consider which approach is correct.  *Choice Hotels International, Inc. v. Shiv Hospitality*, 491 F.3d 171, 175-176 (4th Cir. 2007).

400 (1990). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). "When a case becomes moot, a federal court is deprived of its power to act, since there is nothing left for the court to remedy." *Burns*, 776 F.Supp.2d at 75.

The foregoing principles, however, do not divest the Court of jurisdiction under the present circumstances. An order confirming an arbitral award finalizes the redress for the injury giving rise to the underlying controversy. *Kalawaia v. AIG Hawaii Insurance Co.*, 977 P.2d 175, 180-183 (Haw. 1999). When provided for by the contracting parties, an "application for confirmation and judgment is available as a speedy remedy to complement the otherwise available, but more ponderous, remedy of complaint and judgment." *Insurdata Marketing Services*, 352 F.Supp.2d at 1255. In this respect, the controversy between the parties remains live until the arbitral award is confirmed. *Drummond*, 785 N.W.2d at 833; *Mikelson*, 227 P.3d at 565-567. Consequently, a federal court constrained by Article III may confirm an award even in the absence of a *new* dispute involving the award's application or enforcement. *Smith*, 798 F.Supp.2d at 757; *Collins*, 361 F.Supp.2d at 1093; *District Council No. 9*, 272 F.Supp.2d at 239.

A federal court's jurisdiction to enter an order confirming an arbitral award under § 9 is somewhat similar to its jurisdiction to enter a consent decree. "A consent decree 'embodies an agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'" *Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004), quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Although "a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction," it is premised on the parties'

voluntary agreement to certain terms and conditions. *Local Number 93, International Association of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland*, 478 U.S. 501, 525, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). The agreement provides the court with the authority to enter a judgment. *Lawyer v. Dept. of Justice*, 521 U.S. 567, 579, n. 6, 117 S.Ct. 2186, 138 L.Ed.2d 669 (1997). Nevertheless, the consensual nature of the resolution does not render the underlying controversy moot. *League of United Latin American Citizens, District 19 v. City of Boerne*, 659 F.3d 421, 435-437 (5th Cir. 2011).

When the parties to "a contract evidencing a transaction involving commerce" agree to have any arbitral award arising thereunder entered as a judgment, § 9 provides a court with the authority to enter an order confirming such an award. *Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc.*, 998 F.2d 145, 154, n. 11 (3d Cir. 1993). The FAA's statutory scheme clearly contemplates the confirmation of uncontested awards. Although parties have only three months to file applications for vacatur, modification or correction, they have a full year to file applications for confirmation. 9 U.S.C. §§ 9, 12. The nine-month difference between these limitations periods would serve no purpose if a court could confirm an arbitral award only in response to a competing application for vacatur, modification or correction. Accordingly, an order confirming the uncontested award in this case would not be inconsistent with the FAA.

In addition to challenging the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1), PNC moves for the dismissal of this action pursuant to Rule 12(b)(6). Docket No. 10 at 1; Docket No. 11 at 3-4. Ameriprise's application for confirmation, however, is not subject to the notice-pleading requirements of Rule 8(a)(2). *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994); *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 748 (11th Cir. 1988). The Federal Rules of Civil Procedure apply

to proceedings governed by the FAA only to the extent that the FAA does not prescribe "other procedures." FED. R. CIV. P. 81(a)(6)(B). Section 6 of the FAA plainly provides that Ameriprise's application for confirmation must be considered "in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. The "complaint" filed by Ameriprise is a § 9 "application" rather than a "pleading." *IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298, 308-309 (3d Cir. 2006). It cannot be dismissed for failing "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

The sufficiency of an "application" for confirmation must be judged in relation to § 13 of the FAA, which provides:

> **§ 13. Papers filed with order on motions; judgment; docketing; force and effect; enforcement**
> The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:
>> (a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.
>> (b) The award.
>> (c) Each notice, affidavit, or other property used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.
> The judgment shall be docketed as if it was rendered in an action.
> The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

9 U.S.C. § 13. Ameriprise's filings conform to § 13 in all relevant respects. Docket No. 1 at ¶ 20; Docket Nos. 1-3, 1-4, 1-5 & 1-7. No basis exists for dismissing the application.

According to PNC, the entry of an order confirming the arbitral award would "show up in the judgment index" when title companies research PNC's title status, thereby causing "unnecessary delays or disputes concerning title to PNC's properties as PNC explains the

absence of any liability to Ameriprise."  Docket No. 11 at 5.  PNC contends that "the Court

should refuse to enter a judgment that will cloud PNC's title in this way."  *Id.* at 6.  Workman's

deed of trust was apparently recorded in Los Angeles County, California, on December 6, 2004.

Docket No. 1 at 5.  Ameriprise maintains that a judgment concerning "a single parcel of land in

Los Angeles County" will not "create a cloud on title affecting all of PNC's properties."  Docket

No. 13 at 7.

      PNC's request for the exercise of discretion runs counter to the plain language of § 9,

"which unequivocally tells courts to grant confirmation in all cases, except when one of the

'prescribed' exceptions applies."  *Hall Street*, 552 U.S. at 587.  No application for vacatur,

modification or correction was filed during the three-month limitations period.  9 U.S.C. § 12.

Indeed, PNC appears to concede that no basis for vacatur, modification or correction exists.

Docket No. 16 at 4.  An order confirming the arbitral award is available to Ameriprise because of

unambiguous language contained in agreements to which PNC was a party.  Docket No. 1-4 at

43; Docket No. 1-5 at 37.  Under these circumstances, the Court "must grant" Ameriprise's

application for an order confirming the relevant portion of the award rendered by the arbitral

tribunal.  9 U.S.C. § 9.

## V.    <u>Conclusion</u>

      For the foregoing reasons, PNC's motion to dismiss will be denied.  Docket No. 10.  In

accordance with the clear mandate of § 9, Ameriprise's application for an order confirming the

prospective portion of the arbitral award will be granted.  Docket No. 1.  No opinion is expressed

as to whether a federal court has jurisdiction to confirm satisfied monetary awards.  *Zeiler*, 500

F.3d at 169; *Collins*, 361 F.Supp.2d at 1093; *District Council No. 9*, 272 F.Supp.2d at 239.

Since the relevant portion of the award was "clearly intended to have a prospective effect," the

Court has no occasion to consider whether the satisfaction of PNC's monetary obligations would have otherwise mooted this case. *Derwin*, 719 F.2d at 491. The order proposed by Ameriprise will be entered. Docket No. 1-1.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: November 26, 2012

cc: All counsel of record